## S06A0332. DECATUR COUNTY v. BAINBRIDGE POST SEARCHLIGHT, INC.

(632 SE2d 113)

CARLEY, Justice.

Based upon a citizen's complaint, the Decatur County Grand Jury began a civil investigation of certain actions undertaken by the commissioners of that county (Commissioners). Thereafter, the grand jury forwarded to the county attorney its proposed presentments for the May 2005 term. These presentments questioned the propriety of the manner in which the Commissioners handled the vacation and overtime policies applicable to county employees, particularly with regard to payments made to a former county administrator. A cover letter from the district attorney accompanied the proposed presentments, explaining that the documents were being served "on the relevant officials" prior to filing with the superior court and publication so as to give them "an opportunity to respond to said presentments." During a regularly scheduled public meeting on June 28, 2005, the Commissioners retired into executive session with their attorney to review and discuss responding to the proposed grand jury presentments. Pursuant to OCGA § 50-14-4 (b), the Chairperson executed an affidavit of compliance stating that the subject matter of the executive session was devoted to matters that were within an unspecified exception to the Open Meetings Act, OCGA § 50-14-1 et seq. The minutes of the meeting reflect that, after the executive session, "everyone assembled back in the boardroom. Commissioner Battle made a motion to allow [the] county attorney to forward the responses he had shown to the Commissioners in executive session to the appropriate parties."

Two days later, the Bainbridge Post Searchlight, Inc. (Newspaper), which is distributed in Decatur County, sent the Commissioners an open records request to review the documents to which the minutes of the meeting referred. However, the Commissioners informed the Newspaper that the closed session was authorized and that documents discussed in that session were not available for public inspection because they constituted a confidential response by them to proposed grand jury presentments. The Commissioners went on to inform the Newspaper that the requested records would not be disclosed until they were appended to the presentments and published by the superior court pursuant to OCGA § 15-12-80.

The Newspaper made two more requests for the documents, and both were denied on the ground that the information contained therein was not subject to the Open Records Act, OCGA § 50-18-70 et seq., or the Open Meetings Act. On July 19, 2005, the Newspaper filed this action, alleging violations of both Acts and seeking mandamus and other relief. On August 1, the grand jury tendered to the superior

court the presentments and the Commissioners' responses. The superior court approved the presentments and ordered their publication, with the responses published as an addendum thereto. Subsequently, in the Newspaper's action, the trial court found that the Commissioners violated the Open Meetings Act by conducting the closed session and violated the Open Records Act by refusing to comply with the request for the grand jury presentments. Based on those findings, the trial court granted mandamus relief and, pursuant to OCGA § 50-18-73 (b), awarded attorney's fees and costs to the Newspaper. The Commissioners bring this appeal from that order of the trial court.

1. The trial court erred insofar as it granted mandamus relief after the grand jury presentments were published and granted injunctive relief against future violations of the Acts. See *Garnett v. Hamrick*, 280 Ga. 523 (630 SE2d 384) (2006); *Wiggins v. Bd. of Commrs. of Tift County*, 258 Ga. App. 666, 668 (574 SE2d 874) (2002). However, the question of whether the Acts were violated nevertheless remains for resolution, because the trial court, acting pursuant to OCGA § 50-18-73 (b), awarded attorney's fees and costs to the Newspaper.

2. "Except as otherwise provided by law, all meetings" conducted by a public agency "shall be open to the public." OCGA § 50-14-1 (b). However, this provision

> shall not be construed so as to repeal . . . [t]he attorney-client privilege recognized by state law to the extent that a meeting otherwise required to be open to the public . . . may be closed in order to consult and meet with legal counsel pertaining to pending or potential litigation . . . brought or to be brought by or against the agency or any officer or employee or in which the agency or any officer or employee may be directly involved . . . .

OCGA § 50-14-2 (1). The Commissioners contend that the trial court erred in finding that this "attorney-client" exception does not apply in this case.

The "attorney-client" exception recognized by OCGA § 50-14-2 (1) must be construed narrowly, since to interpret it broadly would have the effect of negating the general mandate of OCGA § 50-14-1 (b) that a public agency conduct open meetings. Unless given a limiting construction, an exception to the requirement that an open meeting be conducted would be converted into an expansive rationale for an agency to hold a closed meeting. Georgia case law correctly balances the general preference for open meetings with the limited exception for protecting the attorney-client privilege.

In our litigious society, a governmental agency always faces some threat of suit. To construe the term "potential litigation" to include an unrealized or idle threat of litigation would seriously undermine the purpose of the Act. Such a construction is overly broad. Construing OCGA § 50-14-2 (1) narrowly, we hold that a meeting may not be closed to discuss potential litigation under the attorney-client exception unless the governmental entity can show a realistic and tangible threat of legal action against it or its officer[s] or employee[s], a threat that goes beyond a mere fear or suspicion of being sued. A realistic and tangible threat of litigation is one that can be characterized with reference to objective factors which may include, but which are not limited to, (1) a formal demand letter or some comparable writing that presents the party's claim and manifests a solemn intent to sue, [cit.]; (2) previous or pre-existing litigation between the parties or proof of ongoing litigation concerning similar claims, [cit.]; or (3) proof that a party has both retained counsel with respect to the claim at issue and has expressed an intent to sue, [cit.] This list is not intended to be exhaustive but merely illustrative of circumstances that a trial court may consider, in the exercise of its discretion, that take the threat of litigation out of the realm of "remote and speculative" and into the realm of "realistic and tangible."

*Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870, 874 (2) (549 SE2d 830) (2001).

In this case, there was no "pending or potential litigation." Indeed, there was not even a threat of any litigation. At issue were merely the proposed grand jury presentments which questioned the propriety of certain actions taken by the Commissioners. Thus, it is clear that the topic of the meeting related to the manner in which the county's business was being conducted and, as such, the purpose was to fashion a political response, not to prepare a legal defense. Under these circumstances, we will follow *Claxton Enterprise* and conclude that the trial court properly rejected the Commissioners' claim of "attorney-client" privilege as "remote and speculative," rather than "realistic and tangible."

3. The Commissioners also invoke OCGA § 15-12-80, which authorizes grand juries "to recommend to the court the publication of the whole or any part of their general presentments and to prescribe the manner of publication." The purpose of this statute is to protect public officials from premature and unauthorized disclosure of grand jury proceedings. *In re Floyd County Grand Jury Presentments for*

*May Term 1996*, 225 Ga. App. 705, 707 (1) (484 SE2d 769) (1997). However, the grand jury itself caused the premature release of its presentments by giving them to the county attorney, rather than maintaining the documents' confidentiality and submitting them to the superior court in accordance with OCGA § 15-12-80. Thus, the Newspaper did not seek access to secret grand jury communications. It sought access to documents which had been submitted to public officials for the purpose of allowing them the opportunity to discuss and respond to assertions of impropriety in matters of the public trust. The Commissioners cannot evade the obligation to conduct an open meeting by relying upon a veil of secrecy which the grand jury itself disregarded. Under OCGA § 45-11-4 (g), a public officer who is accused of unprofessional conduct "shall have the right to appear before the grand jury to make such sworn statement as he or she shall desire at the conclusion of the presentation of the [S]tate's evidence." However, a public official who is the topic of a critical grand jury presentment does not have any right to maintain the secrecy of the document which, contrary to the provisions of OCGA § 15-12-80, the grand jury submits to him or her for comment before presenting it to the superior court for publication.

4. Insofar as it found a violation of the Acts and awarded attorney's fees and costs pursuant to OCGA § 50-18-73 (b), the trial court ruled correctly and its judgment is, therefore, affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

Under the attorney-client privilege exception to the Open Meetings Act, a public agency whose members face pending or potential litigation may conduct a closed meeting with their attorney to discuss these matters. Litigation is potential if the threat of being sued is "realistic" or "tangible" — if the "threat . . . goes beyond a mere fear or suspicion of being sued." *Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870, 874 (2) (549 SE2d 830) (2001). In this case, the Grand Jury of Decatur County, the legal arm of the State, actively questioned alleged wrongdoings by members of the Commission and sent proposed presentments to them in which it required explanations and reasons for the Commissioners' activities. The answers to these questions would be used to determine the extent and nature of the proceedings and charges that the grand jury would pursue against the Commissioners. These acts are directly analogous to discovery in a pending suit. As such, it cannot be maintained that the Commissioners were not subject to potential litigation. Therefore, their decision to conduct a closed meeting was proper under the attorney-client exception, and I must respectfully dissent.

The majority recognizes that the two competing policies of open government and attorney-client privilege must be balanced to determine whether a violation of the Open Records and Open Meetings Acts is present in this case. Contrary to the majority, however, this Court does not have to undertake that balancing test, because in the plain language of the Acts and their unambiguous exceptions, the General Assembly struck this balance by protecting the public's right to know what its officials are doing while protecting the rights of officials once their official actions are drawn into question. As the majority notes, the grand jury of Decatur County initiated an investigation into certain actions taken by the Commissioners after it received a citizen's complaint regarding alleged improprieties by the municipal government. When faced with the findings of the grand jury, the Commissioners needed recourse to their attorney to respond to the investigation conducted by the grand jury as a legal component of the State. This is precisely the statutory exception to public access on issues pertaining to pending or potential litigation contained in the Open Records and Open Meetings Acts. Instead of acknowledging the exception, however, the majority recalibrates the straightforward balance set by the General Assembly and creates an even stricter rationale for a public agency to conduct a closed meeting than is mandated by statute.

The grand jury presentment process, a judicial proceeding conducted under the supervision of the superior courts, authorizes the grand jury to conduct investigations of allegations of official misconduct and to issue reports which can lead to further criminal or civil proceedings where violations of the public trust are revealed. OCGA § 15-12-71. In this case, the district attorney provided the relevant proposed presentments to the Commissioners noting in the accompanying cover letter that "pursuant to Georgia law" the presentments investigating the Commissioners were provided prior to filing and publication to give "the officials the opportunity to respond." Rather than a premature release, this was an appropriate undertaking by the district attorney once the grand jury initiated its investigation and formalized the depth of its concern about improper actions undertaken by the Commissioners. It was equally appropriate for the Commissioners to seek counsel's advice in absolute confidence on how to respond to the grand jury inquiry. Conversely, it would be inappropriate for the Commissioners to release the information where the district attorney's cover letter specifically stated that the presentments had not been filed or published.

The majority's conclusion that the fact that the grand jury allowed the proposed presentments to physically leave the grand jury

room amounts to a waiver of the confidentiality is equally unpersuasive and unsupported by statutory framework or legislative intent.[1] OCGA § 50-18-72 enumerates specific exemptions to protected documents and the notion of confidential documents taking on a public form is not present. Rather, the statute makes a specific provision for the publication of presentments done at the behest and under the approval of a judge. See OCGA § 15-12-80. The rationale for judicial oversight to proceed publication is understandable:

> Since the grand jury proceedings are secret, OCGA § 15-12-73, it is possible that a grand jury as a group of laypersons can exceed the scope of their authority and, because of their membership, become involved in politics and in local feuds. It is for this reason that a superior court judge supervises the grand jury and has the duty to scrutinize, receive, and order filed the presentment of the grand jury.

*In re Floyd County Grand Jury Presentments for May Term 1996*, 225 Ga. App. 705, 707 (1) (484 SE2d 769) (1997). See *In re July-August, 2003 DeKalb County Grand Jury*, 265 Ga. App. 870 (595 SE2d 674) (2004). Accordingly, even though there are important reasons to allow a grand jury to bring official misconduct to light, "this beneficial aspect of grand jury reporting must give way to the need for due process and fairness." *Thompson v. Macon-Bibb County Hosp. Auth.*, 246 Ga. 777, 779 (273 SE2d 19) (1980). Pre-publication review gives the institution and its counsel the opportunity to assert that the presentment is subject to expunction as exceeding the grand jury's statutory authority by unnecessarily implicating the institution of wrongdoing where no criminal indictment is returned. *In re Presentments of Lowndes County Grand Jury*, 166 Ga. App. 258 (304 SE2d 423) (1983); *Kelley v. Tanksley*, 105 Ga. App. 65, 66 (123 SE2d 462) (1961). See *In re Laurens County April-June 2001 & July-September 2001 Grand Jury*, 267 Ga. App. 204 (2) (598 SE2d 915) (2004).

In creating the general provisions of the Acts, the General Assembly recognized the desirability of an open government and informed public; however, the General Assembly also provided that the rights extended to citizens under the Acts could not be absolute. To the contrary, when these rights conflict with longstanding principles of law mandating nondisclosure such as attorney-client privilege and the sanctity of grand jury proceedings, they must abate. The Acts were designed to allow the public to monitor the actions of its

---

[1] Under the majority's rationale, in order to avoid liability for damages, the Commissioners were required to foresee the import of the "premature release," and the resulting "waiver" of attorney-client privilege.

government officials. They were not designed to pierce the confidentiality of legal proceedings and potential proceedings which result once the acts of government officials are drawn into question. Accordingly, I would conclude that, so long as the Commissioners' refusal to divulge information that they were not required to disclose was premised on these statutory exceptions, the trial court erred in finding violations of the Open Records and Open Meetings Acts.

I am authorized to state that Justice Benham joins this dissent.

DECIDED JULY 6, 2006.

*Hall, Booth, Smith & Slover, J. Brown Moseley*, for appellant.
*Kirbo & Kendrick, David A. Kendrick*, for appellee.
*Hull, Towill, Norman, Barrett & Salley, David E. Hudson, Stuckey & Manheimer, Hollie G. Manheimer*, amici curiae.